IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THOMAS HOUSTON, } | |
| } | |
| *Plaintiff*, } | |
| v. } | Civil Action No. H-08-1948 |
| } | |
| SARACEN ENERGY ADVISORS, LP, } | |
| SARACEN, LLC, SARACEN ENERGY } | |
| POWER ADVISORS, LP, NEIL E. KELLY, } | |
| and MICHAEL K. KUTSCH, } | |
| } | |
| *Defendants*. } | |

## OPINION AND ORDER

Presently before the Court is Plaintiff Thomas Houston's (Houston) motion to remand (Doc. 6). Upon review and consideration of this document, the response, reply, and surreply thereto, and the relevant legal authority, the Court finds that the motion should be GRANTED and that the case should be REMANDED.

I.  Background and Relevant Facts

In June 2005, Defendants Saracen Energy Advisors, LP, Saracen, LLC, Saracen Energy Power Advisors, LP, Neil E. Kelly, and Michael K. Kutsch (collectively, Saracen) hired Houston as an energy trader and Director of Options Trading. (Pl.'s Pet., Doc. 1 Ex. A at ¶ 13). Saracen promised Houston a base salary, as well as a percentage of the profits he generated minus deductions for overhead and trading costs. (*Id.*). Initially, Saracen would pay the percentage of profits in cash. (*Id.*). Later, however, it would pay this amount partly in cash and partly in phantom stock, also known as deferred compensation, in a fund that vested over time. (*Id.*). The phantom stock fund was governed by the Incentive Award Plan of Saracen Energy Advisors, LP, as amended (the Plan). (*Id.*).

> With respect to its purpose, the Plan states as follows:
>
> The purpose of the Plan is to provide select employees (a) incentives related to their performance and continued employment; (b) an opportunity to participate in the profits (and losses) of the funds managed by Saracen Energy Advisors, LP; and (c) deferred compensation.

(Doc. 6 Ex. 1 at § 1.1).[1]  With respect to its intent, the Plan provides as follows:

> The Plan is intended to be a plan that is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees within the meaning of sections 201(2) and 301(a)(3) of the Employee Retirement Income Security Act of 1974 and shall be interpreted and administered to the extent possible in a manner consistent with that intent.

(*Id.* at § 1.2).

The Plan Administrator establishes an account for each participant and, under each account, a sub-account related to each incentive award. (*Id.* at § 4.1). The initial amount in the sub-account is the dollar value of the participant's incentive award on the grant date. (*Id.* at § 4.2). Saracen then determines how to allocate the participant's incentive award across the funds, and the allocated amounts are converted into interests in the funds as of the grant date. (*Id.*). Reallocation among the funds is in Saracen's sole discretion. (*Id.*). Amounts credited to a participant's sub-account with respect to an incentive award "to the extent vested and not otherwise forfeited" are distributed in a lump sum cash payment within 60 days after the full vesting date or as soon as administratively feasible thereafter. (*Id.* at § 6.1). The full vesting

---

[1] The Court has two copies of the Plan, one effective February 1, 2006 (Doc. 6 Ex. 1), and the other effective January 1, 2007 (Doc. 6 Ex. 4). The copy effective January 1, 2007, applies to Houston's phantom stock compensation for 2006. The Court notes, however, that neither party has provided a copy of the Plan in effect on January 1, 2006, the date Saracen granted Houston's 2005 phantom stock compensation. Additionally, neither party contends that this copy of the Plan used different language than those issued subsequently. The Court, therefore, will rely on the copy effective January 1, 2007, in its Opinion and Order.

date is defined as June 30 of the second calendar year following the calendar year in which the grant date of an incentive award occurs, or as otherwise determined by Saracen.  (*Id.* at § 2.10).

Houston's profit compensation for 2005 was $1,000,000 in cash and $500,000 in phantom stock.  (Pl.'s Pet., Doc. 1 Ex. A at ¶ 14).  In 2006, his profit compensation was $10,000,000 in cash and $6,000,000 in phantom stock.  (*Id.*).  In December 2007, Saracen and Houston entered into an agreement which provided that, in exchange for alterations in the terms of Houston's employment, Saracen would not deduct expenses from Houston's 2007 profits and it would pay these profits entirely in cash.  (*Id.* at ¶ 15).  Houston claims he was entitled to $23,000,000 in profit compensation for 2007.  (*Id.*).  In February 2008, Saracen terminated Houston's employment "for cause" and, as such, refused to pay Houston his profit compensation for 2007 and forfeited his deferred compensation from 2005 and 2006.  (*Id.* at ¶ 18).

Therefore, on May 14, 2008, Plaintiff Houston initiated suit against Saracen in the 157th Judicial District Court of Harris County, Texas (Cause No. 2008-29241) asserting claims for breach of contract, *quantum meruit*, unjust enrichment, money had and received, civil theft, and breach of fiduciary duty with respect to his benefits under the Plan.  Houston seeks damages arising out of Saracen's alleged forfeiture of deferred compensation it awarded Houston for 2005 and 2006 and Saracen's alleged failure to pay profit compensation it owed Houston for 2007.

Saracen timely filed a notice of removal with this Court on June 19, 2008 (Doc. 1).  Saracen asserts that the Plan is an "employee benefit plan" as defined in the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, and that ERISA completely preempts Houston's state law claims.  Saracen, therefore, contends that this Court has original jurisdiction over claims preempted by ERISA under 28 U.S.C. § 1331 and supplemental jurisdiction over any claims not preempted by ERISA under 28 U.S.C. § 1367. Houston,

however, disagrees. On July 25, 2008, Houston filed a motion to remand (Doc. 6). In it, he argues that this Court lacks subject matter jurisdiction because his claims are not preempted by ERISA. Specifically, he contends that this case does not involve an "employee benefit plan."

II.     <u>Legal Standard on Removal Jurisdiction</u>

Federal district courts have original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The question whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)). The well-pleaded complaint rule requires disclosure of the federal question on the face of the complaint. *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997) (citing *Merrell Dow*, 478 U.S. at 804; *Franchise Tax Bd.*, 463 U.S. at 1). The complaint must either state a cause of action created by federal law or it must assert a state law claim requiring the "resolution of a substantial question of federal law." *Torres*, 113 F.3d at 542 (quoting *Franchise Tax Bd.*, 463 U.S. at 13).

The burden of establishing federal jurisdiction is on the removing party. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). A defendant may remove a case only if the plaintiff could have originally initiated the suit in federal court. *Merrell Dow*, 478 U.S. at 808 (citing 28 U.S.C. § 1441(b)). Therefore, "the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Id.* There is, however, an exception to the well-pleaded complaint rule. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). "'[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be

removed." *Id.* at 207 (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). "ERISA is one of these statutes." *Id.* at 208.

III.     Discussion

Whether Saracen properly removed this case to federal court depends on whether the Plan falls under ERISA. Specifically, the issue is whether the Plan, as it applies to Houston's 2005 and 2006 deferred compensation, is a "pension plan" under ERISA, as Saracen suggests, or an exempted bonus plan, as Houston proposes.[2] For the reasons set forth herein, the Court agrees with Houston's contention that the Plan is an exempted bonus plan.

ERISA covers "employee benefit plans" including "employee pension benefit plans." 29 U.S.C. § 1002(2)(A). ERISA defines "employee pension benefit plan" and "pension plan" as follows:

> [A]ny plan . . . which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan . . .
>
>> (i) provides retirement income to employees, or
>> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. A distribution from a plan . . . shall not be treated as made in a form other than retirement income or as a distribution prior to termination of covered employment solely because such distribution is made to an employee who has attained age 62 and who is not separated from employment at the time of such distribution.

29 U.S.C. § 1002(2)(A).

---

[2] Houston also seeks damages for Saracen's alleged failure to pay him his profit compensation for 2007. Houston and Saracen allegedly entered into an agreement in December 2007, which provided that, in exchange for alterations in the terms of Houston's employment, Saracen would not deduct expenses from Houston's 2007 profits and it would pay these profits entirely in cash. As such, the Plan does not apply to the 2007 profit compensation.

The Secretary of Labor clarified the limits of the terms "employee pension benefit plan" and "pension plan" in 29 C.F.R. § 2510.3-2. "This section clarifies the limits of the defined terms 'employee pension benefit plan' and 'pension plan' . . . by identifying certain plans . . . which do not constitute employee pension benefit plans[.]" 29 C.F.R. § 2510.3-2(a). With respect to bonus programs, this section provides as follows:

> . . . the terms "employee pension benefit plan" and "pension plan" shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees.

29 C.F.R. § 2510.3-2(c). Accordingly, the Court must resolve whether the Plan at issue in this case is an exempted bonus plan or if it systematically defers distributions of benefits from the Plan to the termination of covered employment or beyond.

The Plan explicitly states that its purpose is to provide select employees "(a) incentives related to their performance and continued employment; (b) an opportunity to participate in the profits (and losses) of the funds managed by Saracen Energy Advisors, LP; and (c) deferred compensation." (Doc. 6 Ex. 1 at § 1.1). In accordance with the Plan and its stated purpose, Houston received phantom stock, otherwise known as deferred compensation, in the Saracen fund for the work he performed and the profits he generated in 2005 and 2006. The value of his phantom stock fluctuated with the value of the Saracen fund.

In accordance with the Plan, within 60 days after the full vesting date or as soon as administratively feasible thereafter, Saracen shall distribute a lump sum cash payment to the participant. (*Id.* at § 6.1). The Plan defines the full vesting date as June 30 of the second calendar year following the calendar year in which the grant date of an incentive award occurs, or as otherwise determined by Saracen. (*Id.* at § 2.10). As it states in Houston's December 31,

2007, statement, the full vesting date for the phantom stock granted on January 1, 2006, is January 1, 2009, and the full vesting date for the phantom stock granted on January 1, 2007, is June 30, 2009. (Doc. 6 Ex. 3). Although one of the Plan's stated purposes is, in fact, to defer compensation, a deferral cannot be longer than three years based on the Plan language. Although this may run into a participant's retirement or the termination of his employment, the Court agrees with Houston that three years is not a period systematically calculated to run into retirement or termination. Thus, the Court finds that the Plan at issue in this case is not an ERISA plan. *Murphy v. Inexco Oil Co.*, 611 F.2d 570 (5th Cir. 1980), and *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929 (8th Cir. 1999), support the Court's resolution of this issue.

In *Murphy*, the Fifth Circuit found that an assigned royalty interest in an oil drilling prospect, paid annually to certain employees, was not an ERISA plan. *Murphy*, 611 F.2d at 572-74. The primary purpose of the plan was to reward employees for their service with present benefits, and it was merely an incident of the vesting of economic benefits that participation continued as long as production lasted and so resulted in payments after retirement, death, or disability. *Id.* at 574. The plan provided that benefits be paid immediately, not deferred in any fashion, systematic or otherwise. *Id.* at 575. The Fifth Circuit, therefore, determined that ERISA did not apply to this plan. *Id.*

In *Emmenegger*, the Eighth Circuit determined that the phantom stock plan (PSP) at issue was not a pension plan under ERISA but, rather, an exempted bonus plan. *Emmenegger*, 197 F.3d at 932. In the PSP, the shares vested as to the original participants who were continuously employed by the company one-third at a time, on the first, second, and third anniversaries of the award date. *Id.* at 931. Once the shares vested, they became payable at "redemption value" upon the occurrence of a triggering event, such as retirement, disability,

death, termination without cause, or takeover. *Id.* at 932. Additionally, original participants could redeem their vested shares, at their option, anytime after October 19, 1993 (five years after implementation of the program), even if they were still employed by the company. *Id.* The Eighth Circuit found that the phantom stock's redemption value was inextricably tied to the company's current performance. *Id.* "The redemption value formula presupposes that, if the managers have done their jobs well, BMT's earnings will have been enhanced. In that situation, the shares will be more valuable to the managers. The PSP thus sets up a classic 'bonus' situation: reward (higher cash value) for superior performance (higher corporate earnings)." *Id.* at 932-33 (footnote omitted). The Eighth Circuit further found that the redemption of shares is not a payment that is systematically deferred to termination or so as to provide retirement income. *Id.* at 933.

Houston's phantom stock or deferred compensation could be distributed before his retirement. In fact, even if he wished to, Houston could not defer distribution until his retirement. Here, distribution under the Plan occurs no later than three years after the incentive award's grant date. Although this distribution may occur after a participant retires or is terminated, the Plan does not condition distribution upon either of these events. The Plan does not provide any mechanism for the systematic deferral of payments until termination or beyond or so as to provide retirement income to employees. Upon review and consideration of the Plan's stated purposes and the way in which the incentive award is invested in the Saracen fund and subsequently distributed to participants, the Court finds the Plan establishes a classic bonus situation. Select employees are rewarded for superior performance and given the opportunity to participate in the profits and losses of the company. Thus, the Court finds that the Plan is an exempted bonus plan, not an ERISA pension plan.

Saracen offers two arguments on the issue of whether the Plan is a "pension plan" under ERISA. First, Saracen contends that the surrounding circumstances demonstrate that the Plan, in operation, systematically defers compensation until retirement or termination. Second, Saracen asserts that the express terms of the Plan support the conclusion that it is an ERISA "pension plan." The Court is not persuaded by either of these arguments.

Saracen claims that a plan is a pension plan if the surrounding circumstances demonstrate that it functions as one. Saracen points to three specific surrounding circumstances to support this argument. First, Saracen filed a top-hat letter with the Department of Labor (DOL) in compliance with the requirements governing ERISA top-hat plans.[3] (Siciliano Aff., Doc. 7 Ex. A at ¶ 4).[4] Second, the Plan specifically contemplates distributing benefits to participants after their termination, retirement, death, or disability, if these events occur prior to the vesting date. (Doc. 6 Ex. 1 at §§ 5.2, 5.3). Lastly, of the Plan's 24 participants, 25% of them are former employees who have yet to receive their benefits. (Siciliano Aff., Doc. 7 Ex. A at ¶ 6).

Saracen cites to the following language from a DOL opinion letter to support its "surrounding circumstances" argument:

> . . . under section 3(2)(A) of ERISA, a plan . . . which does not by its express terms provide retirement income or result in the deferral of income by employees for periods extending to the termination of covered employment or beyond may be a pension plan if it has these effects as a result of surrounding circumstances. Thus, if payments under a plan are, in operation, systematically deferred

---

[3] A top-hat plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1).

[4] In his reply, Houston objects to the Affidavit of Peter Siciliano, Vice President – Accounting of Saracen Energy Advisors, LP (Siciliano), attached as exhibit A to Saracen's response. Houston argues that Saracen failed to disclose Siciliano in its July 24, 2008, initial disclosures. The Court finds that this objection is moot because Saracen has amended the initial disclosures to include Siciliano.

> until the termination of employment or retirement age, in such case, the plan may be deemed to be a pension plan.

DOL Op. No. 98-02A, 1998 WL 103654, at *2 (1998). Additionally, Saracen cites to several cases that acknowledge that the court should look at "surrounding circumstances" when determining whether a plan falls under ERISA. While the Court accepts this proposition of law, it nevertheless finds the cases to which Saracen cites distinguishable.

In *Spitz v. Berlin Indus.*, No. 93 C 6355, 1994 WL 48593 (N.D.Ill. Feb. 16, 1994), the plan participant could not withdraw more than 50% of his account (or $100,000, whichever is less) during each redemption period until he was at least 58. *Id.* at *4. The court found that this was a systematic deferral of a significant amount of the payments. *Id.* The court held that the plan was an ERISA plan because the employer registered the plan with the federal government as a covered plan, the plan's purpose statement expressed the intention to provide retirement income, the plan's terms operated to defer a significant portion of the account balance until at least the time the employee turned 58, and Congress expressed its intention that ERISA be construed liberally. *Id.* at *5.

The fact that the employer registered the plan with the federal government as a covered plan is just one of the factors on which the district court relied in *Spitz*. Additionally, there are marked differences between the deferred compensation plan in *Spitz* and the one at issue in the instant case. The plan in *Spitz* had a stated purpose of providing retirement income, and payments were made when participants retired or reached an age range typically associated with retirement. Neither of these facts are present in the instant case.

The Court finds the remainder of the case law upon which Saracen relies distinguishable. *See Kaufman v. S & A Rest. Corp.*, No. 3:06-CV-2192-G, 2008 WL 2242621, at *7 (N.D.Tex. May 30, 2008) ("Looking at the stated purpose of the Plan, the court finds that the

plan is a 'bonus' plan.  Because the Plan only provides a chance to redeem 40% of vested points, and only once every 2 years, the court finds that the defendants' bonus plan systematically defers payment until the termination of employment."); *Critelli v. Fidelity Nat'l Title Ins. Co. of New York*, No. 05-CV-0371 (NGG)(AKT), 2007 WL 749693, at *3-4 (E.D.N.Y. Mar. 7, 2007) ("The fact that the bonus is computed on the basis of a percentage of Fidelity's pre-tax profits indicates that it is designed to serve as an incentive for the management staff to maximize profits for Fidelity rather than to provide 'retirement income' for them."  Further, "a mere option to defer compensation is insufficient to trigger ERISA coverage."); and *Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629, 634 (W.D.Wisc. 1979) ("The Plan by 'the express terms' of the Plan document was established to provide retirement income to employees of the sponsoring companies and this fact alone establishes ERISA coverage.  In addition, the evidence . . . establishes that, 'as a result of surrounding circumstances' the Plan was established and maintained to provide retirement income to employees[.]").

The Court finds Saracen's "surrounding circumstance" arguments and case law in support thereof unpersuasive.[5]  Although the Plan contemplates distributing benefits to participants after their termination, retirement, death, or disability, if these events occur prior to the vesting date, it is neither part of the Plan's purpose nor its intent to systematically defer distribution until the termination of or beyond employment or to provide retirement income.  With respect to Saracen's argument that 25% of the plan participants are former employees, the Court finds that this is merely coincidental.  The Court has considered the surrounding circumstances cited to by Saracen and finds that they do not weigh in favor of construing the Plan as an ERISA "pension plan."

---

[5] With respect to the first "surrounding circumstance," the Court will address the fact that Saracen filed a top-hat letter with the Department of Labor when it addresses Saracen's argument that it intended ERISA to govern the Plan.

Additionally, Saracen argues that the express terms of the Plan support the conclusion that it is a "pension plan" under ERISA. With respect to the argument that it intended ERISA to govern, Saracen cites to the plain language of the Plan, which states, in pertinent part,

> The Plan is intended to be a plan that is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees within the meaning of sections 201(2) and 301(a)(3) of the Employee Retirement Income Security Act of 1974 and shall be interpreted and administered to the extent possible in a manner consistent with that intent.

(Doc. 6 Ex. 1 at § 1.2). This language includes the statutory definition of a top-hat plan as defined in 29 U.S.C. § 1101(a)(1). Furthermore, Saracen cites to a provision in the Plan that provides that the Plan administrator has "complete discretion to interpret the Plan and to decide all matters under the Plan." (*Id.* at § 7.1).

As the court in *Long v. Excel Telecomm. Corp.*, No. Civ.A. 3:98-CV3015G, 2000 WL 1562808 (N.D.Tex. Oct. 18, 2000), provided, a top-hat plan under ERISA is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees, but a plan that is restricted to these individuals does not become an ERISA plan merely by virtue of such restriction. *Id.* at *3 (citation omitted). Rather, "top hat plans are a subset of the two recognized types of ERISA plans-welfare or pension plans-rather than a third class of plans." *Id.* (citation and internal quotations omitted).

Saracen argues that the Court should look to the language in the Plan, specifically sections 1.1 and 1.2, as evidence of its intent that the Plan's purpose is to defer income under ERISA. In support thereof, Saracen cites to *Hahn v. Nat'l Westminster Bank, N.A.*, 99 F. Supp. 2d 275, 279 (E.D.N.Y. 2000) ("The Plan's express statement of purpose . . . is entitled to weight when determining the nature of the plan.") and *Holzer v. Prudential Equity Group LLC*, 458 F.

Supp. 2d 587, 592 n. 8 (N.D.Ill. 2006) (". . . other courts determining whether a particular pension benefit plan is covered by ERISA have considered what the stated purpose of the plan is."). While the Court agrees with these two propositions of law, it finds that the stated purpose of the Plan in the instant case is not to systematically defer the distribution of income until termination of employment or retirement. In *MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178 (5th Cir. 1992), the Fifth Circuit noted as follows:

> MDP [the plaintiff] fervently argues that because MDP *intended* ERISA to cover the MDP Plan, ERISA governs the Plan. We find this logic flawed. ERISA protection and coverage turns on whether the MDP Plan satisfies the statutory definition of "employee welfare benefit plan," not whether the entity that established and maintained the MEWA [the plan] intended ERISA to govern the MEWA.

*Id.* at 183 n. 7 (internal citation omitted) (emphasis in original). The issue in *MDPhysicians* was whether MDP was an "employer" within the meaning of ERISA thus making the MDP Plan an "employee welfare benefit plan" under ERISA. *Id.* at 183. Although the Plan at issue in the instant case involves the deferral of income until retirement or termination requirement, the Court finds the Fifth Circuit's note on intent instructive. Although Saracen argues that ERISA should govern the Plan because it intended ERISA to govern the Plan, the Court finds that the purpose of the Plan is not to systematically defer the distribution of income until termination or retirement. As such, it is not an "employee pension plan" under ERISA.

For reasons the Court explains above, the Plan at issue in this case is not an "employee pension plan" under ERISA. Therefore, ERISA cannot completely preempt Houston's state law claims. Accordingly, there is no federal question jurisdiction and no basis for removal. Remand of Houston's case to state court is, therefore, appropriate.

- 14 -

IV.        Conclusion

Accordingly, the Court hereby ORDERS that the plaintiff's motion to remand (Doc. 6) is GRANTED and that this case is REMANDED to the 157th Judicial District Court of Harris County.

SIGNED at Houston, Texas, this 27th day of March, 2009.

*[signature]*

MELINDA HARMON
UNITED STATES DISTRICT JUDGE